February 15, 1939


Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

                    Opinion No. O-43
                    Re:  Claim of Ewell Nalle
                         for rent for building
                         leased to State Tax
                         Board

          We are in receipt of your letter of February 4,
1939, together with the following enclosures:

          1.  Requisition for office space from the State
Tax Board to the State Board of Control, dated August 24,
1937, showing the amount of space needed.

          2.  Call for bids by the State Board of Control,
dated September 3, 1937.

          3.  Bid of Ewell Nalle, dated September 7, 1937,
addressed to the State Board of Control and offering the
fourth floor of the Nalle Building for a period of two
years from September 1, 1937, for an annual rent of
$2400 payable at the rate of $200.00 per month.

          4.  Letter from the State Tax Commissioner Albert
K. Daniel to Mr. J. R. Ham, Secretary of the State Board of
Control, dated September 10, 1937, urging acceptance of the
Nalle bid.

          5.  Copy of letter, dated September 14, 1937, from
the State Board of Control to the State Tax Board advising
acceptance of the Nalle bid.

          6.  Additional to those instruments, we have been
furnished with the original letter, dated September 14,
1937, mentioned above, and with copy of a letter dated
September 1, 1937, from Albert K. Daniel, State Tax Com-
missioner, to Mr. Nalle advising of the desire of the State
Tax Board to continue the lease on the fourth floor of the
Nalle Building at the same rental which had been paid in the
past (which we understand was $200.00 per month).

7. Original letter from Mr. Nalle to Mr. Albert K. Daniel, State Tax Commissioner, dated September 4, 1937, acknowledging receipt of said letter dated September 1, 1937, and accepting the offer therein made.

8. Copy of letter dated September 14, 1937, from the State Board of Control to Mr. Ewell Nalle advising that the Board had accepted his bid.

9. Photostatic copy of Senate Bill No. 119 of the current Legislature.

10. Letter from Jerome Sneed, Jr., Attorney, to Albert K. Daniel, State tax Commissioner, dated February 2, 1939, advising that Mr. Nalle is standing on his rental contract and is claiming a lien upon all furniture, fixtures and equipment located in the leased premises and will hold the same until his claim for rent is satisfactorily disposed of.

You ask our opinion in response to the following questions:

"1. Is such furniture and fixtures subject to the landlord's lien claimed by the landlord in this case?

"2. Is the appropriation for office rent made to the State Tax Board in the General Appropriation Bill still available for the payment of the rent claimed?

"3. If you answer the foregoing questions in the negative, then please advise this department the procedure to follow in obtaining possession of the furniture and equipment."

The Regular Session of the 45th Legislature by Senate Bill No. 138, known as the Departmental General Appropriation Bill, at page 1478, made the biennium appropriation for the maintenance of the State Tax Board, and under Item 18 of the appropriations for that board, it recites: "Office rent, $2400 for each year of the biennium ending August 31, 1939."

The appropriation of the sum of $2400.00 per year for the biennium beginning September 1, 1937, for office rent for the State Tax Board, unquestionably carried with it the authority for the Board to house itself in rented quarters at an expense not exceeding the amount appropriated. We think this necessarily envisaged the right to make some kind of an agreement for the renting of office spaces.

In the case of Johnson vs. Smith, 246 S. W. 1013, Supreme Court, the Comptroller, Lon A. Smith, had entered into a two year contract with certain persons for them to collect certain inheritance taxes. The law authorizing the making of the contract, was repealed. Thereafter, but within the term of the contract, collections were made and the County Tax Collector paid the ten per cent commissions to the collectors. This was a mandamus action brought by Johnson, the Tax Collector, to compel the Comptroller to credit his account with the amount thus paid the collectors. We copy paragraphs 2 and 6 of the opinion, as follows:

"(2) Respondent insists that the article of the statute under which the contract was made did not authorize a contract for any fixed or definite period of time, and therefore the contract was without authority and unenforceable. It would be unreasonable to hold that the Legislature authorized and instructed the comptroller to make a contract with some suitable person or persons who would render diligent aid in the collection of inheritance taxes and perform services that would entail much outlay of time, energy, and expense, and yet limit same to a contract at will. No suitable person or persons would be willing to enter into such a contract. It must be implied that the authority given included the making of a contract for a given or definite period of time.

"(5) The able attorneys for respondent insist that to hold that the Legislature could not repeal the law so as to terminate this and similar contracts would be against public policy and disastrous to the public good. The state, like individuals, especially when entering into private contracts, must first well consider what contracts it will enter into or authorize, with the view of having them performed accord-

ing to their terms. When the State becomes
a party to a contract with a citizen, the same
law applies to it as underlike condition governs
the contracts of individuals. Anderson v. Robi-
son (Tex. Sup.) 229 S. W. 459, 238 S. W. 883,
and cases there cited.

"The writ of mandamus is granted."

In Fort Worth Cavalry Club v. Sheppard, 83
S. W. (2d) 660, Supreme Court, a mandamus was sought to
compel the issuance of a state warrant for the payment
of "certificates issued in lieu of deficiency warrants."
The Adjutant General had purported to lease an armory for
five years at $285.00 per month. The appropriation for
the Adjutant General's Department had been exhausted.
The question really involved was whether the rental con-
tract was valid. The Supreme Court held that it was not,
in the course of the opinion saying:

"A careful reading of the above quoted
statutes clearly demonstrates that none of them
contains any express language authorizing the Adjutant
General to rent or lease armories for the National
Guard for a period of five years, or, for that
matter, for any period. When we come to construe
such statutes, together with the above quoted
appropriation act, it is reasonably clear to us
that the Adjutant General had the implied power,
within the reasonable limitations of such appro-
priation, to make contracts for the period and
purposes covered thereby, and no further. This
holding renders this contract illegal."

The letter from the State Tax Commissioner to
Mr. Nalle, dated September 1, 1937, and the reply thereto,
dated September 4th of the same year, would be sufficient
in themselves to constitute a renewal of the then expiring
lease on the fourth floor of the Nalle Building at $200.00
per month for the biennium. Furthermore, the other instru-
ments and correspondence mentioned above between the State
Tax Board and the Board of Control and between the Board
of Control and Mr. Nalle would be sufficient to constitute
a contract, provided the Board of Control had the right to
make the contract. Thus whether the right of contract re-
sided with the Board of Control or the State Tax Board is
a question which in itself is not necessary for us to de-
termine since the above mentioned papers show that both
authorities made such a contract.

The contract that was made did not exceed the
amount appropriated nor did it attempt to go beyond the

biennium for which the appropriation was made. We think the right to make the lease agreement included the right to make the most advantageous kind of agreement that could be made so long as the State Tax Board confined itself to the appropriation. It could hardly be expected that a really advantageous contract could be made which did not extend to some definite period of time.

Our answer to your second question is in the affirmative.

We understand that you do not now desire an answer to your first and third questions in view of the above answer to your second one.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By (Signed)
Glenn R. Lewis
Assistant

BRL:N

APPROVED:

(Sgnd.) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS